UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FRANCISCA DURAN, Individually<br>and as the Independent Administrator of the<br>ESTATE OF CONRADO GOMEZ, III<br><br>    Plaintiff,<br><br>VS.<br><br>THE CITY OF EAGLE PASS,<br>FERNANDO CHACON, JOSE L. IBARRA,<br>and RICARDO ZEPEDA<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No: SA-10-CA-0504-XR<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

On this date, the Court considered Plaintiff's Motion for Default Judgment (docket no. 7), filed July 27, 2010, and Request for Hearing (docket no. 9), filed August 25, 2010.

**I. Facts and Procedural Background**

According to the Complaint, Plaintiff Francisca Duran is the mother of Conrado Gomez, III, a twenty-four-year-old man who committed suicide by hanging himself with a telephone cord while he was in custody in an Eagle Pass Municipal Jail holding cell. Compl. ¶ 1. On the day of Gomez's death, Gomez arrived home "crying and visibly upset." Compl. ¶ 14. Francisca Duran called 9-1-1 after Gomez threatened to kill himself and suddenly left the house in his car, carrying a gun. Compl. ¶ 14. She told the operator that her son might be a danger to himself. Compl. ¶ 15. Police searched for and found Gomez, and Officers Chacon and Zepeda took Gomez into custody. Gomez told the officers that he hoped the cops "could kill me." *Id.*

Officers Chacon and Zepeda brought Gomez to the police station, where he was booked at

approximately 5:48 p.m. and placed in a detention cell. Compl. ¶ 16-17. Gomez's clothes, except his underwear, were removed. At approximately 6:15 p.m., Officer Nava observed Gomez trying to strangle himself with his underwear. *Id.* Officer Nava removed Gomez's underwear and left Gomez in the detention cell. *Id.* ¶ 18. About ten minutes later, Officer Chacon went to check on Gomez, and found him hanging from the wall phone with the telephone cord around his neck. Compl. ¶ 18-19. Gomez died as a result. Compl. ¶ 20.

On June 17, 2010, Plaintiff Francisca Duran, individually and as the independent administrator of the Estate of Conrado Gomez, III, filed this lawsuit, asserting claims against Defendants the City of Eagle Pass, Fernando Chacon, Jose L. Ibarra, and Ricardo Zepeda. Plaintiff asserts various due process claims under 42 U.S.C. § 1983, as well as supplemental state-law negligence claims against the City. On June 23, 2010, Plaintiff served the City of Eagle Pass by personally serving Mayor Ramsey English Cantu. *See* TEX. CIV. PRAC. & REM. CODE § 17.024 (an incorporated city may be served by personally serving the mayor). On June 24, Defendants Chacon, Ibarra, and Zepeda were each personally served with a summons and copy of the Complaint. No Defendant filed a responsive pleading or otherwise appeared. As a result, Plaintiff moved for entry of default, and default was entered on July 27, 2010. *See* docket no. 8. Plaintiff has also moved for default judgment, and requests a hearing pursuant to Rule 55(b)(2) to establish the proper amount of unliquidated damages, the "causal connection of Plaintiff's damages to claimed injuries," prejudgment interest, and attorney's fees.

## II. Analysis

Rule 55(a) provides that a default judgment is proper when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. FED. R. CIV. P. 55(a).

However, in considering any motion for default judgment, the Court must examine jurisdiction, liability, and damages.

**A. Jurisdiction**

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). The Court has reviewed the returns of service and the pleadings and concludes that it has personal jurisdiction over Defendants.

**B. Liability**

With regard to liability, the default causes all well-pleaded allegations of fact related to liability to be deemed admitted. *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524-25 (5th Cir. 2002). However, though the Court must accept these facts as true, the default alone does not warrant entry of default judgment, and the Court retains the obligation to determine whether the well-pleaded facts state a claim upon which relief may be granted. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that, "despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"; rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered"); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that default judgment was improper on claims that were barred or subject to dismissal under Rule 12(b)(6)); Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2688 ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus,

"before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007).

**1. Claims Against the Individual Defendants**

Plaintiff's Complaint fails to specify whether the claims against the Individual Officers are asserted against them in their individual capacities or their official capacities, and the prayer seeks relief only against "the Defendant," indicating that claims are brought only against the City. If the claims against the Individual Officers are brought in their official capacities, they are redundant of the claims against the City, and would be subject to dismissal. Normally, the Court would presume that, to avoid such redundancy, the Plaintiff intended to assert the claims against the Individual Officers in their individual capacities. The Court cannot grant default judgment against the Individual Officers in their individual capacities in this situation, however, because the Individual Officers would not have been on clear notice of the claims against them. Accordingly, the Court denies default judgment on Plaintiff's claims against the Individual Officers because, to the extent Plaintiff is asserting claims against the Individual Officers in their official capacities, such claims would be subject to dismissal as redundant, and to the extent Plaintiff is suing them in their individual capacities, such a claim is not evident from the pleadings.

**2. Claims Against the City of Eagle Pass**

Plaintiff asserts the following claims against the City: (1) a claim under § 1983 for violation of Gomez's Fourteenth Amendment due process right to reasonable medical care; (2) a claim under § 1983 for violation of Gomez's Eighth Amendment due process right to reasonable medical care;

(3) a claim under § 1983 for violation of Gomez's Fourteenth Amendment right to be free from state-created danger; (4) a claim under § 1983 for violation of Gomez's Fourteenth Amendment right to protection due to the special relationship between him and the Defendant; (5) a claim for negligence related to the condition or use of tangible personal property; (6) a claim for negligence related to the condition or use of real property; and (7) a claim for negligence related to "the condition or use of a premises defect." Though Plaintiff asserts seven different independent claims, the claims are essentially two claims – violation of due process and state-law negligence – with different theories of liability.

### 1. Due Process

Plaintiff asserts a due process claim under four theories of liability – (1) a Fourteenth Amendment due process right to reasonable medical care; (2) an Eighth Amendment due process right to reasonable medical care; (3) a Fourteenth Amendment substantive due process claim based on a state-created danger theory, which holds that state officials have a duty to protect individuals from harm when their actions created or exacerbated a danger to the individual; and (4) a Fourteenth Amendment substantive due process claim based on a "special relationship" theory, which holds that the Constitution imposes upon the state a duty of care towards individuals who are in its custody. Plaintiff asserts these theories in the alternative. The Court finds it appropriate to address three of the claims – the Fourteenth and Eighth Amendment due process right to reasonable medical care and "special relationship" claims – together, and addresses the state-created danger theory separately.

#### *a. Due Process right to medical care/failure to protect claims*

"The Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors," including themselves, unless

they have a "special relationship" with the state that creates a duty on the part of the state. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195 (1989); *see also Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border."). When a state restrains an individual's freedom to act on his own behalf, the state may create a "special relationship" between the individual and the state, and "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for [the person's] safety and general well-being." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 466 (5th Cir. 2010). Custodial status (*i.e.*, the nature of the special relationship) affects "the source of the constitutional right and the duty owed by the state." *See Walton v. Alexander*, 44 F.3d 1297, 13011 n.3 (5th Cir. 1995) ("The duties owed by the state to persons in the state's custody have been articulated differently in different contexts.").[1]

Thus, "[p]retrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v. City of Cornith, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment and, with a relatively limited reach, from substantive due process," while "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* (citations omitted). Claims of pretrial detainees who are denied reasonable medical care are analyzed under two different standards, depending on whether the claim

---

[1] In making this statement, the Fifth Circuit differentiated among the duties owed to involuntarily committed mental patients, school children, pretrial detainees, and convicted prisoners.

is based on a condition of confinement or on an episodic act or omission. *See Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009). Further, the Supreme Court has held that the state must ensure "reasonable safety" to involuntarily committed mental patients. *Doe v. San Antonio Indep. Sch. Dist.*, 197 Fed. App'x 296, 300 (5th Cir. 2006) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315-25 (1982)).

Because Gomez was not a convicted prisoner, Plaintiff's claim would not arise under the Eighth Amendment, and there is no legal basis for a default judgment on that claim. Plaintiff's Complaint implies that Gomez was a pre-trial detainee; it alleges that "Gomez was a detainee" in the Eagle Pass Municipal Jail, Compl. ¶ 1, and also refers to his "arrest," Compl. ¶ 12. Pretrial detainees are persons who have been charged with a crime but have not yet been tried on the charge. There is no allegation that Gomez was charged with any crime. However, the Complaint also states that he was placed into what the officers called "protective custody."[2] This appears to be the more accurate characterization of his custodial status, though it is not entirely clear. The Court must thus determine whether the pretrial detainee standard or the "reasonable safety" standard should apply to Plaintiff's claims.

In *Youngberg v. Romeo*, 457 U.S. 307, 315-25 (1982), the Supreme Court held that when persons are involuntarily committed to a mental institution and, thus completely dependent on the

---

[2] Texas law authorizes a peace officer to take a person into custody without a warrant if the officer reasonably believes that (i) a "person is mentally ill," (ii) there is a "substantial risk of serious harm to the person ... unless the person is immediately restrained," and (iii) there is insufficient time to obtain a warrant. TEX. HEALTH & SAFETY CODE § 573.001(a). A peace officer who takes a person into custody under this section "shall immediately transport the apprehended person to: (1) the nearest appropriate inpatient mental health facility; or (2) a mental health facility deemed suitable by the local mental health authority, if an appropriate inpatient mental health facility is not available." *Id.* § 573.001(d). "A jail or similar detention facility may not be deemed suitable except in an extreme emergency." *Id.* § 573.001(e).

state, the state has a duty to provide such patients with certain services and care as are necessary for their "reasonable safety" from themselves and others.[3] In *Hare v. City of Corinth, Mississippi*, 74 F.3d 633 (5th Cir. 1996), the Fifth Circuit noted that the "Court in *Youngberg* thus announced a distinct standard to be applied in measuring the State's constitutional duties to mental incompetents, one that differed from both the *Bell* test and the deliberate indifference standard." *Id.* at 646. The Fifth Circuit noted that this measure "flowed from the premise that '[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Id.* at 647 (quoting *Youngberg*, 457 U.S. at 321-22). But the Fifth Circuit also stated that the later decision in *Deshaney* "called into question the constitutional significance of this premise" because the Court stated that the duty to protect arises out of the limitations the State has imposed upon the person's freedom, not the reasons for the confinement, and thus the purpose of the confinement "should have no bearing on the nature of the constitutional duty owed to either" involuntarily confined mental incompetents and convicted inmates. *Hare*, 74 F.3d at 647. The Court declined to resolve the issue in *Hare*, however, and does not appear to have resolved it since. *See, e.g.*, *Langford v. Union County, Miss.*, 51 Fed. App'x 930 at *3 (5th Cir. 2002) (declining to decide the issue because it was waived).

Thus, it is not clear whether the Court should apply the *Youngberg* "reasonable safety" standard or the pretrial detainee standard to Plaintiff's Fourteenth Amendment due process/"special relationship" claims. Plaintiff's Complaint applies the deliberate indifference standard. Given that

---

[3] "Although *Youngberg* involved involuntarily committed mentally retarded patients, its standard is routinely applied to cases involving involuntarily committed mentally ill patients." *Patten v. Nichols*, 274 F.3d 829, 837 n.3 (4th Cir. 2001) (citing *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir.1996); *Estate of Porter v. Illinois*, 36 F.3d 684, 688 (7th Cir.1994)).

Plaintiff applies this standard, and that Gomez was in police custody rather than a medical facility at the time of his death, the Court will apply the pretrial detainee deliberate indifference standard. *See Patten v. Nichols*, 274 F.3d 829 (4th Cir. 2001) (holding that the *Youngberg* standard applies to involuntarily committed mental patients housed in a hospital setting, but noting that when the persons were detained in police custody pending psychiatric evaluations and the claims asserted were based on police action occurring while the decedents were in police custody, the decedents were more similar to traditional pretrial detainees than to patients involuntarily committed to psychiatric hospitals). Further, Plaintiff's Fourteenth Amendment due process claim to reasonable medical care and the Fourteenth Amendment "special relationship" claim will be treated as one claim.

If a pretrial detainee properly states a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because intent may be inferred from the decision to expose a detainee to an unconstitutional condition. *Shepherd*, 591 F.3d at 452. If the claim is properly characterized as based on episodic acts or omissions, in which "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission," the detainee is required to prove intent – specifically, that one or more jail officials acted or failed to act with deliberate indifference to the detainee's needs. *Id.* The Fifth Circuit does not permit "plaintiffs to conflate claims concerning a prison official's act or omission with a condition-of-confinement complaint." *Anderson v. Dallas County, Tex.*, 286 Fed. App'x 850, 858 (5th Cir. 2008). Based on Fifth Circuit precedent, Plaintiff's claim

in this case is properly characterized as being based on episodic acts or omissions. *Id.* at 859; *see also Brumfield v. Hollins*, 551 F.3d 322, 328 n.4 (5th Cir. 2008); *Sibley v. Lemaire*, 184 F.3d 481, 487-88 (5th Cir. 1999)(lawsuit of mentally disturbed detainee who had injured himself while left alone and shackled was properly classified as an episodic act or omission because his injuries were caused by specific alleged acts or omissions); *Hare*, 74 F.3d at 643-45, 650 (lawsuit concerning suicide of detainee was not a conditions of confinement claim because it was premised on jail officials' episodic acts or omissions).

Thus, Plaintiff must demonstrate: "(1) that the municipal employee violated [Gomez's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Brumfield*, 551 F.3d at 331 (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999)). To demonstrate subjective deliberate indifference under the first prong, the plaintiff must show that the municipal employee "knew of and disregarded an excessive risk to [Gomez's] health or safety." *Id.* (quoting *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)). Thus, Plaintiff must demonstrate that the individual officers were aware of facts from which an inference of an excessive risk to Gomez could be drawn, and that the officers actually drew the inference that such potential for harm existed. *Anderson v. Dallas County, Tex.*, 286 Fed. App'x 850, 860 (5th Cir. 2008). Plaintiff's allegations that Officers Chacon, Zepeda, and Nava knew that Gomez was suicidal, yet placed or left him in the detention cell with the obvious risk posed by the telephone and without monitoring, is sufficient to satisfy the subjective deliberate indifference prong.

To hold the City liable, however, Plaintiff must also show objective deliberate indifference

on the part of the City. Thus, Plaintiff must identify a policymaker and show that an official policy is the "moving force" behind the municipal employee's allegedly unconstitutional act. *Id*. The objective deliberate indifference standard "considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights." *Id.* (quoting *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir.2002)). The City may act with objective deliberate indifference if it promulgates (or fails to promulgate) a policy or custom despite "the known or obvious consequences" that constitutional violations would result. *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

  Plaintiff alleges generally that Eagle Pass was "deliberately indifferent to Mr. Gomez' medical needs as indicated by facts including but not necessarily limited to its failure to train its employees and/or implement policies and procedures that would have provided for the proper treatment of Mr. Gomez" and that "[t]he Defendant's employees were acting under color of state law and according to the official policy and custom of the City of Eagle Pass, or lack of same." Compl. ¶¶ 24-25, 51-52.[4] Though Plaintiff alleges that the City's employees were acting "according to the official policy and custom of the City," the Complaint fails to identify any specific custom or policy (other than a failure to train, discussed below), and simultaneously alleges the "lack of same." However, a municipality's failure to train its officers can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Brumfield v. Hollins*, 551 F.3d 322, 332 (5th Cir. 2008). To

---

[4] Plaintiff also alleges that "Defendant was deliberately indifferent to Mr. Gomez' medical needs as indicated by facts including but not necessarily limited to is failure to train its employees and properly treat Mr. Gomez." However, there is no allegation that any City policymaker made a decision regarding how to properly treat Gomez in particular.

11

successfully hold Eagle Pass liable on this basis, Plaintiff must show that (1) the City [through its policymaker] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Gomez's rights; and (3) the failure to train or supervise constituted deliberate indifference to Gomez's constitutional rights. *Brumfield*, 551 F.3d at 332. The Complaint alleges that the City failed to train its employees and/or implement policies and procedures that would have provided for the proper treatment of Mr. Gomez. Compl. ¶ 24. Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). Plaintiff's allegation that the City failed to train its employees or implement policies and procedures for dealing with suicidal detainees, if true, would amount to objective deliberate indifference to the obvious consequences that constitutional violations to the rights of suicidal detainees would result. *Langford v. Union County, Miss.*, 51 Fed. App'x 930 (5th Cir. 2002) (holding on similar facts that general allegations of failure to train or implement policies regarding the care of suicidal persons were sufficient to withstand a Rule 12(b)(6) motion). Accordingly, the Court will enter a default judgment on liability on Plaintiff's Fourteenth Amendment due process/"special relationship" claim.

### b. State-created danger theory

Plaintiff also pursues a "state-created danger" theory of due process liability. The Fifth Circuit has never expressly adopted this theory of liability. *Bustos v. Martini* Club, 599 F.3d 458, 466 (5th Cir. 2010) ("[T]his circuit has not adopted the state-created danger theory."); *see also Walding v. United States*, Civ. A. No. 08-CV-124-XR, 2009 WL 701807 (March 16, 2009)

(discussing Fifth Circuit case law).  As a result, courts often grant motions to dismiss such claims under Rule 12(b)(6).  *See, e.g.*, *Kovacic v. Larry Brown Enters., L.L.C.*, Civ.A. No. L-09-2, 2009 WL 5195979 at *8 (S.D. Tex. Dec. 22, 2009).

But assuming such a theory could be viable, the Fifth Circuit has stated that "[i]n order to recover under the state-created danger theory, we assume that at a minimum, a plaintiff must demonstrate that (1) the state actors created or increased the danger to the plaintiff, and (2) the state actors acted with deliberate indifference." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 314 (5th Cir. 2002).  Courts considering the state-created danger theory of liability in cases similar to this one have concluded that the claim fails because there was no indication that the plaintiff was more vulnerable to suicide after his encounter with the officers than before.  *See Boudoin v. St. Charles Parish Hospital*, Civ. A. No. 07-6842, 2009 WL 602961 (E.D. La. March 9, 2009) (discussing cases applying state-created danger doctrine in context of suicidal persons and noting that, "even when police officers had prior knowledge of a person's suicidal tendencies, a 'state-created danger' cause of action under § 1983 based on that person's eventual suicide has failed as a matter of law").  Similarly, in this case, the allegations in the Complaint do not necessarily establish that the officers created or increased the danger to Gomez through their actions.  The fact that they failed to eliminate all risks to Gomez does not establish that they created or increased the risk that Gomez would commit suicide.

Further, because the Court has already granted default judgment on Plaintiff's due process claim, granting a default judgment on this theory of liability would permit a double recovery.  For all these reasons, default judgment on this theory is denied.

13

2. Negligence

Plaintiff asserts a negligence claim against the City of Eagle Pass. Municipal entities retain governmental immunity from common-law tort claims, except to the extent immunity is waived under the Texas Tort Claims Act ("TTCA"). *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001). Under section 101.021 of the TTCA,

> A governmental unit in the state is liable for:
>
> . . .
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE 101.021. Section 101.022 provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). The plaintiff bears the burden of pleading facts sufficient to demonstrate a waiver of immunity.

Plaintiff's first negligence claim is for "negligence related to the condition or use of tangible personal property." Plaintiff alleges that City employees "were negligent regarding the use or misuse of tangible personal property and/or through furnishing Mr. Gomez with inadequate or defective tangible personal property" and negligence regarding their implementation of policy. The tangible personal property is alleged to be "a telephone in a detention cell for suicidal detainees, a detention cell, a detention-cell door, and a detention cell window." Compl. ¶ 53. Plaintiff also asserts two independent claims based on a condition or use of real property – "negligence related to the condition or use of real property" and "negligence related to the condition or use of a premises

defect." Though the former claim is characterized as "negligence related to the condition or use of real property," the allegations concern only use. Specifically, Plaintiff contends that "Defendant's employees, while acting within the scope of their employment, were negligent regarding the use or misuse of real property" and "[t]he real property included[,] but is not necessarily limited to[,] a telephone in a detention cell for suicidal detainees, a detention cell, a detention-cell door, and a detention cell window."[5] With regard to the premises defect claim, Plaintiff alleges that the City "possessed real property which contained a premises defect" that "included[,] but was not necessarily limited to[,] the detention cell in which Mr. Gomez was contained and/or the condition of a detention cell in which Mr. Gomez should have been contained," and that "[t]he condition of the real property posed an unreasonable risk of harm to Mr. Gomez due to Mr. Gomez' known suicidal tendencies, and the premises defect proximately caused Mr. Gomez' injuries."

The Court concludes that Plaintiff's negligence claims are foreclosed as a matter of law. This Court, the Fifth Circuit, and the Texas Supreme Court have all previously ruled that a state actor's making available non-defective personal property that someone else uses to commit suicide does not satisfy the TTCA's waiver provision for injury caused by a condition or use of tangible personal property. *See Mann v. Lopez*, 404 F. Supp. 2d 932, 940-41 (W.D. Tex. 2005); *Anderson v. Dallas County, Tex.*, 286 Fed. App'x 850, 863 (5th Cir. 2008); *Forgan v. Howard County, Tex.*, 494 F.3d 518, 521 (5th Cir. 2007); *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244 (Tex. 2004). Further, the Texas Supreme Court held in 2009 that a prisoner's use of a telephone cord to commit suicide in a county holding cell did not constitute a "condition or use" of property and thus immunity

---

[5] These are the same items alleged to be tangible personal property in Plaintiff's claim related to the condition or use of tangible personal property. Compl. ¶ 53.

was not waived. *Dallas County v. Posey*, 290 S.W.3d 869 (Tex. 2009). The decedent's parents argued that the county's failure to replace the telephone in the holding cell with a cordless phone was "negligent use" because the county was aware of previous suicides in which the decedents used telephone cords, but the Texas Supreme Court rejected this claim, asserting that it was "at best, a mis-use or a non-use, neither of which waives immunity under the Act." *Id.* at 871. Though Plaintiff in this case characterizes her claims differently than the plaintiff in *Posey*, *Posey* is factually and legally indistinguishable from the current case, except for the fact that the City employees in this case knew that Gomez was suicidal when they placed him in the cell. However, the Court in *Posey* considered such a factual scenario and stated that, "even if Posey had apparent suicidal tendencies, the county would still be immune under *Cowan* because it did no more than place Posey in a cell with a corded telephone which he, himself, used to commit suicide." *Id.* at 872. The Court thus finds that *Posey* precludes Plaintiff's negligence claims, and default judgment is inappropriate.

## C. Damages

>Rule of Civil Procedure 54(c) states that
>
>[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

FED. R. CIV. P. 54(c). Damages may ordinarily not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). The Court finds that a hearing is appropriate, and grants Plaintiff's motion for hearing.

**Conclusion**

Plaintiff's Motion for Default Judgment (docket no. 7) is GRANTED IN PART and DENIED IN PART. Specifically, the motion is granted with regard to Plaintiff's Fourteenth Amendment due process/special relationship claim, and is denied with regard to all other claims. Plaintiff's Request for Hearing (docket no. 9) is GRANTED. Plaintiffs shall coordinate with the Court's law clerk to set a date and time for the hearing.

It is so ORDERED.

SIGNED this 5th day of October, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE