# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| **FRANCISCA DURAN, ET AL.** | § |
| | § |
| **v.** | § |
| | §    SA-10-CV-504-XR |
| **CITY OF EAGLE PASS, TEXAS, ET AL.** | § |
| | § |

## ORDER

On this day came on to be considered JCW Electronics, Inc.'s motion for summary judgment (docket no. 75), City of Eagle Pass's motion for summary judgment (docket no. 78), and the individual defendants' motion for summary judgment (docket no. 79), and the various responses and replies thereto.

### I.

### Background

On June 11, 2009, Plaintiff Francisca Duran called the Eagle Pass Police Department stating that her son, Conrado Gomez III, possessed a handgun and was threatening to commit suicide. Police officers responded, and Mr. Gomez was later found at a friend's home. The weapon was handed over to law enforcement officers by Mr. Gomez's friend. Prior to being placed inside the patrol vehicle, Mr. Gomez told law enforcement officers "why don't you f-ing cops just shoot me." Once he was placed into protective custody another officer described Mr. Gomez as "agitated, mad and depressed." While inside the patrol vehicle, Mr. Gomez began to bang his head against the plexiglas separating the front and back seats. He was thereafter

transported to the city jail and placed in a detention cell. No mental health intake assessment was done and no police officer contacted any mental health provider regarding Mr. Gomez.[1]

For his safety, except for his boxer shorts (and potentially his socks), Mr. Gomez's clothes were removed prior to his placement in the detention cell. Some minutes[2] after being placed in the cell, a police officer saw that Mr. Gomez was attempting to strangle himself using his boxer shorts.[3] The officer entered the cell, removed the boxer shorts, but otherwise left Mr. Gomez unrestrained, naked and alone in the cell. Some minutes later, another police officer discovered that Mr. Gomez hanged himself using a telephone cord from a telephone located inside the detention cell. Mr. Gomez was transported to a hospital, but was later pronounced dead.

Plaintiff Francisca Duran brings this suit under 42 U.S.C. § 1983, alleging that the City and three individual officers (Jose L. Ibarra, Fernando Chacon, and Richard Zepeda) deprived Mr. Gomez of his constitutional rights and failed to provide for his safety or were deliberately indifferent to his safety. Defendant JCW Electronics, Inc.[4] is alleged by Plaintiff to have installed the telephone equipment in the cell.[5]

---

[1] "I can't comment on him [Mr. Gomez] having mental health issues but they are certainly contributing factors that should raise some red flags that, you know, that an assessment should have been done or should have been ordered." Deposition of Police Chief Juan Antonio Castaneda at p. 36. The City Police Department's Field Training Program Manual has a section devoted to encountering individuals with signs of mental illness. The City has available to it the resources of Camino Real MHMR who can perform mental health evaluations "24/7." *Id*. at p. 38.

[2] The parties disagree somewhat regarding the amount of time that elapsed. A videotape of the detention area had a time counter associated with it. The counter, however, was not synced with "real" time. In addition, Plaintiff argues that the City engaged in spoliation after it disposed of the original videotape.

[3] Plaintiff argues that Mr. Gomez may earlier have also attempted a suicide attempt using his socks. Plaintiff argues that videotape appears to indicate that a police officer entered Mr. Gomez's cell and confiscated his socks. Plaintiff argues that the only plausible explanation for this entry into the cell was that an officer saw that Mr. Gomez was attempting to harm himself with his socks and accordingly an officer entered the cell and confiscated the socks.

[4] JCW Electronics, Inc. provides payphone systems for a large number of jail facilities. The telephone equipment is installed free of charge to the jail facility and inmates make collect calls using the system. Once expenses are deducted, profits are shared between JCW and the individual facility. Deposition of Bradley M. Woods at pp. 25-26.

[5] Phones were installed in the detention cells on or about February 11, 2000. The Police Chief testified that the phones were installed in the detention cells at the direction of Felix Cerna, the city manager. Deposition of Police Chief Juan Antonio Castaneda. at pp. 39, 43, 49-50. The Police Chief testified that he opposed the idea because of

Plaintiff alleges that the Defendants violated the Fourteenth Amendment by failing to protect a person who was mentally ill. In the alternative, Plaintiff alleges that the Defendants were deliberately indifferent to the safety of their mentally ill detainee. Plaintiff also alleges that the City was negligent in using the cell as an unauthorized substitute for a mental health facility and failed to contact a proper local mental health authority when it encountered a suicidal individual. Plaintiff also alleges that JCW Electronics, Inc. was negligent in installing a corded telephone inside the cell when it knew that the City intended to use the cell to detain mentally ill individuals. Intervenor, Conrad Gomez, the decedent's father, brings the same allegations and causes of action. The City has filed a third-party complaint against JCW Electronics, Inc., alleging that it was negligent in failing to notify the City of the potential danger posed by the metal cord attached to the telephone. The City also brings claims of breach of implied warranty, breach of express warranty, strict liability, and misrepresentation.

## II.

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed allegations such that reasonable minds could differ as to the

---

safety concerns. *Id*. at pp. 39-40. The police Chief testified that JCW did not make the decision as to where the phones would be installed. *Id*. at p. 51.

import of the evidence, the motion must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

## III.

### JCW's motion for summary judgment

JCW argues that with regard to the Plaintiff's negligence claim, it is entitled to summary judgment as a matter of law because "the mere installation or presence of a phone in a cell" was not a proximate cause of Mr. Gomez's suicide. It further argues that with regard to the implied warranty of fitness claim, the phone was not leased to Plaintiff, JCW had no special relationship to Plaintiff or Mr. Gomez, and Plaintiff did not give any notice to JCW of any breach of implied warranty. In addition, JCW argues that pursuant to Tex. Civ. Prac. & Rem. Code § 93.001(a)(2) Mr. Gomez's death was a suicide and that it is entitled to assert suicide as an affirmative defense to all claims asserted. Finally, JCW argues that the City's claims are not causes of action asserted against it, but are claims for contribution only.[6]

### A. Plaintiff's and Intervenor's claims of breach of implied warranty

Plaintiff and Intervenor allege that JCW "knew the particular purpose for which the telephone was used" and "knew that Defendant Eagle Pass relied on their [sic] skill and judgment to select, locate and maintain a telephone suitable for such use. The product furnished by Defendant JCW was unfit for such attended [sic] use by individuals within the City's custody."

To prevail on a claim for breach of the implied warranty of merchantability, a plaintiff must prove that: (1) the defendant sold or leased the product to the plaintiff; (2) the product was unmerchantable; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff

---

[6] The Court notes that the City has asserted five different causes of action against JCW in its Third-Party Complaint. See docket no. 27.

suffered injury. *Polaris Industries, Inc. v. McDonald*, 119 S.W.3d 331 (Tex. App.-Tyler 2003, no pet.). A product is "unmerchantable" if it is "unfit for its ordinary purposes." Tex. Bus. & Com. Code § 2.314(b)(3) (Vernon 2003). A product that is inadequate for its intended purpose or is unreasonably dangerous is unfit for its ordinary purposes. *See, e.g., Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999); *Church & Dwight Co., Inc. v. Huey*, 961 S.W.2d 560, 569 (Tex. App.-San Antonio 1997, pet. denied).

Plaintiff and Intervenor fail to raise a material fact issue on elements of this claim. The phone was not sold or leased to them. The phone was not inadequate for its intended purpose and was not unreasonably dangerous for its ordinary purposes. Finally, Plaintiff and Intervenor never notified JCW of the breach. JCW's motion for summary judgment on this claim by Plaintiff and Intervenor is granted.

To the extent that Plaintiff and Intervenor bring a claim of breach of the implied warranty of fitness for a particular purpose, the Texas Business and Commerce Code provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish the suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose." Tex. Bus. & Com. Code § 2.315 (Vernon 1994). To establish a breach of the implied warranty of fitness for a particular purpose, the plaintiff must establish that (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting and (2) the buyer was relying on the seller's skill or judgment to select or furnish suitable goods. Tex. Bus. & Com Code § 2.315 (Vernon 2009); *ASAI v. Vanco Insulation Abatement, Inc*., 932 S.W.2d 118, 121 (Tex. App.-El Paso 1996, no writ).

JCW appears to argue that neither Plaintiff nor Intervenor may bring this claim because only the City contracted with JCW for the phones. Otherwise, no party has briefed the question as to whether privity of contract is required. Another case addressing a JCW phone involved in a suicide appears to support the position that privity of contract is not required. *See JCW Electronics, Inc. v. Garza*, 176 S.W.3d 618 (Tex. App.-Corpus Christi 2005) (evidence was sufficient to show that telephones installed in jail cell were not safe for particular purposes of unattended use by inmates, as required to support claim by representative of inmate's estate and others against electronics corporation), *rev'd on other grounds*, 257 S.W.3d 701 (Tex. 2008).[7] Defendant's motion for summary judgment on this claim is denied.

### B. Plaintiff's and Intervenor's negligence claim against JCW

Plaintiff and Intervenor allege that "JCW had actual knowledge that the City intended to use the cell to detain and confine mentally ill individuals with suicidal tendencies and that ready access to a telephone wire or cord by such individuals created a dangerous condition." Plaintiff and Intervenor allege that JCW "was negligent in locating and maintaining such corded equipment in the detention cell."

The elements of a negligence claim are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). JCW only argues in its motion that the proximate cause element has not been established. JCW argues that pursuant to *Dallas County v. Posey*, 290 S.W.3d 869 (Tex. 2009)[8],

---

[7] The Court's own independent research indicates that a plaintiff can recover personal-injury damages in an implied warranty action against the seller if it is in horizontal privity with the seller. *See Garcia v. Texas Instrs., Inc*., 610 S.W. 2d 456, 465 (Tex. 1980). Horizontal privity describes the relationship between the original seller and any nonbuyer who uses or is affected by the thing sold. *Id*. at 463-64.

[8] "This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury. *Id*. at 343. Posey's parents claim that the condition of the corded telephone was defective because, not only was it inoperable, but wires were exposed on the handset. The incident memorandum prepared after the suicide stated that Posey 'placed the receiver between the exposed [ ] wires of the telephone cord' in order to create the ligature he used to commit suicide. The court of appeals found proximate cause, reasoning that 'without the corded

there was no causal nexus between the phone and the suicide. JCW's reliance upon *Posey*, however, is misplaced inasmuch as the Texas Supreme Court in that case was addressing waiver of governmental immunity under the Texas Tort Claims Act.

In a wrongful-death action, the plaintiff must prove that the defendant's alleged actions proximately caused the decedent's death. *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868 (Tex. App. -- Beaumont 2007, pet. denied). If negligence is alleged as the wrongful act, a plaintiff must show that the defendant's negligent act or omission was a substantial factor in bringing about the decedent's death, and without it, the decedent's death would not have occurred. *THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548 (Tex. App. -- Amarillo 2010, pet. denied).

The general rule in actions brought under the Wrongful Death Act is that suicide is an intervening force that breaks the line of causation from wrongful act to death. *Exxon Corp. v. Brecheen*, 526 S.W.2d 519 (Tex. 1975); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170 (Tex. App. -- Houston [14th Dist.] 1994, writ denied). Where the wrongful act, however, is in response to an uncontrollable impulse, the act of suicide is considered as within and a part of the line of causation from the defendant's wrongful act to the suicide, and the defendant's act is considered to be the proximate cause of the death. *Id*.

---

telephone being in the cell, Bryan Posey would not have died by hanging himself with the telephone's cord.' 239 S.W.3d at 342 (*citing Sw. Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 274 (Tex. 2002)). However, there was no causal nexus between the condition of the exposed wires and the injury. For a defective condition to be the basis for complaint, the defect must pose a hazard in the intended and ordinary use of the property. For example, the exposed wires in this case might have posed an electrical hazard to an ordinary user of the telephone. But the exposed wires here did not cause the injury; they instead constituted no more than a condition of the property that was then used by Posey to form a ligature for suicide. The requisite nexus between the condition complained of and the harm was thus not established. Therefore, the county's immunity is not waived under the Act." *Id*. at 872.

In this case JCW met with representatives of the City, knew where the phones were to be installed, installed corded phones in the detention cells, and knew based upon past cases[9] that inmates could potentially commit suicide using corded phones located in their cells. JCW's motion for summary judgment arguing that the proximate cause element has not been established is denied.

## IV.

## City of Eagle Pass' Motion for Summary Judgment

### A. Failure to Train claims

The City seeks summary judgment, arguing that Plaintiff and Intervenor's failure to train claims[10] fail as a matter of law because there is no evidence that the city police officers were inadequately trained. Alternatively, it argues that even if there was inadequate training, it did not amount to deliberate indifference. The City has presented competent summary judgment evidence that the City has policies regarding the training of its officers. In addition, the City has presented evidence that its officers completed training on suicide and crisis intervention.

To prevail on this theory, Plaintiff and Intervenor must show that (1) the city failed to train its officers on suicide prevention/intervention; (2) a causal link exists between the failure to train and the violation of Gomez's rights; and (3) the failure to train amounts to "deliberate indifference" to his constitutional rights. *See Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998).

Intervenor argues in support of his failure to train claim that "all the [police officers] had to do is follow what the TCLEOSE course told them to do, which was to keep an eye on Conrado

---

[9] Prior to Mr. Gomez's death, JCW had been sued in two different cases because its phones had been placed in detention facilities and the phones were used by inmates to commit suicide.

[10] This claim is asserted within paragraph 28 of the First Amended Original Complaint (the body of text asserting a failure to protect Gomez claim).

Gomez until someone from Camino Real [mental health agency] arrived." This, however, does not raise any material fact to defeat Defendant's motion. By this statement, Intervenor concedes that the City provided training. Intervenor merely argues that the individual police officers disregarded their training. Plaintiff does not respond to this portion of the Defendant's motion. The City's motion for summary judgment on this claim is granted.

### B. Plaintiff's and Intervenor's section 1983 claims for failure to protect

Plaintiff and Intervenor complain that the City failed to "implement adequate policies and procedures for dealing with suicidal individuals in their [sic] custody, by its deliberate policy and custom to use the detention cell as an unauthorized substitute for a mental health facility, by its deliberate failure to implement a policy for contacting the local mental health authority regarding a suicide individual, by its authorization or license of the placement of the corded phone within the cell, and by its failure to provide policies and procedures to provide for reasonable monitoring and proper restraint of the mentally ill."[11]

The City argues that the previous suicides involving JCW phones in other cities involved phones with an 18-inch cord and 8-inch cord. The phones installed at the Eagle Pass jail possessed 6-inch cords. The City argues that a "six-inch telephone cord is not an obvious risk as an instrument in committing suicide." It further states in a conclusory fashion that it "legitimately appeared to be impossible for Gomez to hang himself by wrapping a six-inch cord completely around his neck, which is the conventional hanging method."[12] Finally, the City argues that while "the City Manager may have been aware of concerns about placing corded telephones inside the cells, it cannot be said that he appreciated the danger that the final product

---

[11] *Id.*

[12] Vincent DiMaio, M.D. testified that Mr. Gomez died as a result of a partial suspension hanging, i.e. "the pressure of the cord is on the neck and it takes about maybe 10 and 11 pounds of pressure to constrict what are called the carotid arteries." Deposition of DiMaio at p. 13.

(a telephone with a short cord) would result in a violation of Gomez's constitutional rights, and that he refused to adopt a policy to make the phone cords safe." It further argues that the City had a policy that required officers to check on inmates with medical conditions every 15 to 30 minutes. It further argues that in the past there have been a number of attempted suicides inside the jail, but that all other attempted suicides had been successfully prevented. The Court construes the City's arguments as arguing that it was not deliberately indifferent.

A "policymaking or supervisory official's individual liability under § 1983 arises only at the point at which a plaintiff shows 'that the official, by action or inaction, demonstrates a deliberate indifference to [the plaintiff's] constitutional rights.' *Id*. at 454; *see City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (concluding that § 1983 liability arises for policymakers where 'the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need'); *cf. Evans v. City of Marlin, Tex*., 986 F.2d 104, 108 (5th Cir. 1993) ('A failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.') (*quoting Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992))." *Silva v. Donley County Texas*, 32 F.3d 566, *6 (5th Cir. 1994).

Unlike *Evans* where a garden hose was accidently left adjacent to a cell and was used by a prisoner to commit suicide or *Silva* where the prisoner had not expressed suicidal thoughts, in this case City police officers responded to a 911 call of a suicide threat. One or possibly two suicide attempts were made by Mr. Gomez and witnessed by police officers. Mr. Gomez was placed in a cell with a corded phone and maintained in that cell even after the suicide attempt(s) were witnessed. The City knowingly and intentionally had corded phones installed in the cells.

10

Prior to their installation, the police chief expressed reservations to the city manager about placing corded telephones in the cells. Inside the cells were metal rings affixed to the wall that allow for a prisoner to be handcuffed to the ring. Mr. Gomez was not secured in this manner, even after officers witnessed his previous suicide attempt(s). Although the City had a policy regarding cell checks for inmates with medical problems, the policy did not address mental health issues. Material fact issues exist as to whether the City was deliberately indifferent in failing to implement adequate policies and procedures for dealing with individuals taken into protective custody and who are required by state statute to be taken to a mental health facility. In addition, material fact issues exist as to whether the City was deliberately indifferent in placing a corded phone within the cell occupied by Mr. Gomez (i.e. placing Mr. Gomez in an unsuitable environment).

### C. Plaintiff and Intervenor's section 1983 claims regarding failure to transport Gomez to an appropriate mental health facility

Plaintiff and Intervenor argue that inasmuch as Mr. Gomez was taken into protective custody, pursuant to Tex. Health & Safety Code § 573.001, the officers were required to immediately transport Gomez to "(1) the nearest appropriate inpatient mental health facility; or (2) a mental health facility deemed suitable by the local mental health authority, if an appropriate inpatient mental health facility is not available." Tex. Health & Safety Code § 573.001(d). "A jail or similar detention facility may not be deemed suitable except in an extreme emergency." Tex. Health & Safety Code § 573.001(e).

The City states that Mr. Gomez was taken into protective custody after the usual business hours of the Camino Real mental health facility. Assuming the police officers were required to call the 24/7 mental health crisis hotline to report Mr. Gomez, the City argues that the mental

health provider would have needed a commitment order from a Justice of the Peace before Mr. Gomez could have been transported to a hospital in San Antonio or some other city. Further, the City argues that its police officers have made over 290 calls to Camino Real from 2004 through 2011, that the City was not deliberately indifferent to Mr. Gomez, and that this "case presents a departure from the actual practice of requesting such an evaluation or assessment."

It is undisputed that Mr. Gomez was not immediately transported to the nearest appropriate inpatient mental health facility. Although the City argues that a former clinic manager for Camino Real thought the jail was a secure setting, there is no competent summary judgment evidence that the jail was "a mental health facility" deemed suitable by the local mental health authority. Although the City argues that its police officers have made over 290 calls to Camino Real, it is not clear whether those calls were made in order to comply with the mandates of Tex. Health & Safety Code § 573.001, et seq.

Plaintiff emphasizes in her response that it was the police officers' responsibility after taking Mr. Gomez into protective custody to protect him until someone from Camino Real arrived and performed a mental health assessment. Plaintiff's expert opines that someone who is suicidal should have been placed on a constant observation and placed into a cell that was suicide resistant. Plaintiff complains that Camino Real was not contacted, and even after police officers witnessed Mr. Gomez attempting to commit suicide, they still failed to contact Camino Real.

Plaintiff's argument is somewhat unclear to the Court. The above appears to relate to whether placement in the cell (pending evaluation and transfer to a mental health facility) was suitable. Whether Mr. Gomez should have been taken to a mental health facility would not create or cause a risk, if he was placed in an otherwise suitable environment.

Apparently there was no written policy regarding the transportation of individuals in protective custody to a mental health facility. Conversely, there was no written policy or custom that individuals were not to be transported to a mental health facility. Although Plaintiff alleges that the City had a custom or policy that mentally ill prisoners were not to be taken to an appropriate mental health facility, Plaintiff and Intervenor fail to present any competent summary judgment evidence to support that claim. Although the above complaints are relevant to any claims asserted against the individual police officers, there is no respondeat superior liability in the section 1983 setting. The City's motion for summary judgment on Plaintiff's claim that the City had a custom or policy that mentally ill prisoners were not to be taken to an appropriate mental health facility is granted.

### D. Plaintiff's and Intervenor's state law negligence claims

Plaintiff and Intervenor allege that the City was negligent in allowing the detention cell to serve as an unauthorized substitute for a mental health facility. They further allege that the City was negligent in failing to implement a policy "for contacting the local mental health authority regarding a suicide individual." They further allege that the City was negligent in allowing a corded phone to be installed in the cell and in failing "to provide policies and procedures to provide for reasonable monitoring and proper restraint of the mentally ill."

The City argues that the negligence claims were previously dismissed by this Court, and that the allegations asserted in the amended complaint essentially remain unchanged. Plaintiff argues that the City's "use" of a detention cell is use of "real property" and the City has waived its governmental immunity.

The Court concludes that Plaintiff's negligence claims are foreclosed as a matter of law.

This Court, the Fifth Circuit, and the Texas Supreme Court have all previously ruled that a state actor's making available non-defective personal property that someone else uses to commit suicide does not satisfy the TTCA's waiver provision for injury caused by a condition or use of tangible personal property. *See Mann v. Lopez*, 404 F. Supp. 2d 932, 940-41 (W.D. Tex. 2005); *Anderson v. Dallas County, Tex.*, 286 Fed. App'x 850, 863 (5th Cir. 2008); *Forgan v. Howard County, Tex.*, 494 F.3d 518, 521 (5th Cir. 2007*); San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244 (Tex. 2004).

Further, the Texas Supreme Court held in 2009 that a prisoner's use of a telephone cord to commit suicide in a county holding cell did not constitute a "condition or use" of property and thus immunity was not waived. *Dallas County v. Posey*, 290 S.W.3d 869 (Tex. 2009). The decedent's parents argued that the county's failure to replace the telephone in the holding cell with a cordless phone was "negligent use" because the county was aware of previous suicides in which the decedents used telephone cords, but the Texas Supreme Court rejected this claim, asserting that it was "at best, a mis-use or a non-use, neither of which waives immunity under the Act." *Id*. at 871. Plaintiff's attempt to characterize the facts as a misuse or condition of real property is insufficient to overcome *Posey*. The City's motion for summary judgment regarding the state negligence claims is granted.

### V.

### Motion for Summary Judgment filed by Ibarra, Chacon and Zepeda

These individual defendants assert that they are entitled to qualified immunity. They allege that there "is no evidence that the Defendant officers were indifferent to Gomez's welfare…." They allege that they took reasonable measures to abate the risk of suicide. They further allege that any delay in transporting Gomez to a mental health facility or contacting a

14

mental health professional did not deny Mr. Gomez's constitutional right to medical treatment. They argue that they "could not have acted with deliberate indifference unless they were aware the delay in requesting an assessment would result in a denial or delay of access to medical treatment and substantial harm."

In the First Amended Original Complaint, Plaintiff alleges that Officers Ibarra, Chacon and Zepeda failed to notify an appropriate mental health facility upon detaining Mr. Gomez. Plaintiff alleges that "Mr. Gomez directly indicated his suicidal tendencies and mental health problems to Officers Chacon and Zepeda by verbally stating that he hoped that the cops 'could kill me.'" Officer Ibarra was the officer-in-charge of the detention cell area. Plaintiff alleges that Officer Ibarra "placed Mr. Gomez in the cell in deliberate indifference to his mental health needs and to the clear danger such action imposed." Plaintiff alleges that "Officers Chacon and Zepeda processed and placed Mr. Gomez into the detention cell…. Officers Chacon and Zepeda ignored Mr. Gomez' suicidal tendencies and obvious serious medical issues by placing him into a detention cell they knew was not suitable for a mentally ill individual and they knew that within the cell was a telephone with a cord which could be used, and was used, by Mr. Gomez to commit suicide. The Defendants also knew the holding cell was so situated that they could not properly monitor Mr. Gomez without an officer present at all times. Officers Chacon and Zepeda left Mr. Gomez alone and unrestrained within the cell and denied constitutionally-mandated protective care to Mr. Gomez and/or were deliberately indifferent to his medical needs."

To determine whether an official is entitled to qualified immunity, the Court must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See Jacobs v. West Feliciana Sheriff's Dept.*,

228 F.3d 388, 393 (5th Cir. 2000) ("The plaintiffs have alleged that the individual defendants were deliberately indifferent to Jacobs's obvious need for protection from self-inflicted harm. It is well-settled in the law that 'a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights.' *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir.1996) (*citing Hare II*, 74 F.3d at 647-48). By alleging deliberate indifference to Jacobs's clearly established Fourteenth Amendment rights, the plaintiffs have cleared the first hurdle in defeating the defendants' qualified immunity defense.").

To defeat qualified immunity, the plaintiff must establish that the officers in this case were aware of a substantial and significant risk that Mr. Gomez might kill himself, but effectively disregarded it. *See Jacobs*, 228 F.3d at 395. The Court must examine each individual defendant's entitlement to qualified immunity separately. *Id*.

With regard to Officer Ibarra, the summary judgment evidence indicates that he knew that after taking an individual into protective custody, an officer has a state-law duty to transport the person to an appropriate mental health facility. He knew that Camino Real had a representative available 24/7. Assuming arguendo that he did not know that Mr. Gomez was suicidal upon Gomez's entrance into the jail, after the failed suicide attempt with the boxing shorts, Officer Ibarra knew the corded phone could pose a risk, did not contact Camino Real, did not handcuff Mr. Gomez to the metal ring restraints or alternatively did not remove Mr. Gomez from the cell, and did not provide for the constant monitoring of Mr. Gomez while he remained in the cell.

With regard to Officers Chacon and Zepeda, they responded to the 911 call and knew that Mr. Gomez was potentially suicidal. Mr. Gomez communicated a statement to them that could

be considered manifesting suicidal thoughts. They "booked" Mr. Gomez into the jail facility with a listing of "protective custody/attempted suicide." They responded to the attempt by Mr. Gomez to hang himself with his underwear. After the failed suicide attempt, the Officers knew the corded phone could pose a risk, did not contact Camino Real, did not handcuff Mr. Gomez to the metal ring restraints or alternatively did not remove Mr. Gomez from the cell, and did not provide for the constant monitoring of Mr. Gomez while he remained in the cell. At a minimum, fact issues exist as to whether the conduct of all three individual officers were objectively reasonable in light of the duty to not act with subjective deliberate indifference to a known substantial risk of suicide. The Individual Defendants' motion for summary judgment is denied.

## Conclusion

JCW Electronics, Inc.'s motion for summary judgment (docket no. 75) is granted in part and denied in part. The City of Eagle Pass's motion for summary judgment (docket no. 78) is granted in part and denied in part. The individual defendants' motion for summary judgment (docket no. 79) is denied.

With regard to Plaintiff's objections regarding the videotape tendered by the City, Plaintiff argues that portions of the video are missing from this duplicate tape, and that portions of the missing video would demonstrate that Mr. Gomez was originally placed into the cell wearing both socks and underwear. Plaintiff requests that the Court strike the videotape as an exhibit to the motion for summary judgment. The Court has not considered the videotape in ruling on these pending motions. The parties may file any other motion they desire the Court to consider and this matter will be taken up in a future pre-trial hearing so that this issue can be resolved prior to the empaneling of any jury in this case.

SIGNED this 3rd day of May, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE